THOMSON-HOUSTON ELECTRIC CO. v. DALLAS CONSOLIDATED
TRACTION RY. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. March 6, 1893.)

No. 103.

CORPORATIONS—STOCKHOLDERS—UNPAID STOCK—EXECUTION—FEDERAL COURTS
—JURISDICTION.

The stockholders of a corporation formed a new corporation, cancelled
their stock in the old corporation, and caused the property thereof to be
conveyed to the new one; and in payment therefor one of such stock-
holders took stock in such new corporation, also bonds and cash, the stock
taken not having any market value, and the bonds and cash equaling the
value of his stock in the old. A creditor of the new corporation having
obtained judgment against it in the United States circuit court in Texas,
moved for an execution against such stockholder, in conformity with the
provisions of Rev. St. Tex. art. 595, allowing an execution against a stock-
holder to the amount of his stock unpaid. *Held,* that the federal court had
no power, on its law side, to proceed under the statute to reach alleged
unpaid subscriptions for stock obtained under such circumstances.

In Error to the Circuit Court of the United States for the North-
ern District of Texas.

Action by the Thomson-Houston Electric Company against the
Dallas Consolidated Traction Railway Company and J. T. Trezevant.
The plaintiff recovered a judgment against the railway company,
and then made a motion to issue execution against Trezevant, a
stockholder. The circuit court overruled the motion. Plaintiff
brings error. Affirmed.

John D. Templeton and A. M. Carter, for plaintiff in error.

W. W. Leake, (Seth Shepard and T. S. Miller, on the brief,) for de-
fendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and TOUL-
MIN, District Judge.

McCORMICK, Circuit Judge. We adopt from the brief of one of
the counsel for plaintiff in error the following statement of the case:

"The Thomson-Houston Electric Company, the plaintiff in error, is a Connect-
icut corporation; the Dallas Consolidated Traction Railway Company is a
Texas corporation, created and organized, under the laws of the state of
Texas relating to private corporations, for 'the construction and maintenance
of a street railway.' On the 23d day of February, 1892, the plaintiff in error
recovered a judgment against the said traction railway company, for the sum
of $33,590.96. On March 30, 1892, an execution was issued on said judgment
and placed in the hands of the United States marshal for the northern district
of Texas, who returned the same into the court, stating that he was unable to
find any property of the defendant whereon to levy the writ. Thereafter on
April 15, 1892, the plaintiff in error filed its motion in the said court in the
said cause, against the said traction railway company, alleging, in effect, the
recovery of said judgment on the 23d day of February, 1892, for the said
sum of money. That an execution had been issued thereon on the 30th day of
March, 1892, which was returned on the 5th day of April, 1892, with the above
indorsement; that is to say, that the marshal could find no property of the
defendant whereon to levy the execution. It was further alleged that J. T.
Trezevant was a stockholder in the defendant corporation, he being a sub-

scriber for and owner of 840 of its shares, being of the par value of $25 each. That Trezevant had not paid to the said corporation the full value of his said shares of stock, but, instead thereof, there was still due and owing to the corporation 60 per cent. of the par value of the said shares of stock, amounting to the sum of $12,600. That the defendant corporation was not a railway, or religious, or charitable, corporation. Plaintiff in error moved the court that after notice to Trezevant it make such order as might be proper to cause an execution to issue against the property of the said Trezevant in favor of the plaintiff in error for all the balance remaining due and unpaid from him on his stock to said traction railway company. The defendant in error Trezevant filed exceptions and demurrer to the said motion for an execution against him. He denied generally the allegations contained in the motion, and denied that he owned or held any unpaid stock in defendant corporation, and averred that all the stock he then held was paid up. The motion came on for the consideration of the court, July 8, 1892, and on hearing the same the court overruled all the demurrers and exceptions of Trezevant to the said motion; and thereupon proceeded to hear the evidence and argument, and to consider the same, and it thereupon adjudged that it was 'without power to determine whether or not the said J. T. Trezevant had paid in full for the 840 shares of stock owned by him in the Dallas Consolidated Traction Railway Company, and it is therefore ordered that the said motion be, and the same is hereby, dismissed, without prejudice to the right of the plaintiff whatever.' From this judgment or order of the court, the plaintiff in error prosecutes this writ of error. At the request of the plaintiff in error, conclusions of law and fact were filed by the court. The plaintiff in error properly took its bill of exceptions to the said ruling of the court. It assigns for error that the court erred in not entering judgment for the plaintiff against the defendant J. T. Trezevant, upon the facts found by the court, for 60 per cent. of the amount of his subscription of $22,500, namely, $13,500."

At the request of the plaintiff's attorneys the judge of the circuit court filed a written statement of his conclusions of law and fact, finding as follows:

"First. In A. D. 1890, there was existing in Dallas county, in the state of Texas, a private corporation known as the Dallas Consolidated Street Railroad Company; this corporation was incorporated under the general laws of Texas for the purpose of owning and operating street railroad in the city and county of Dallas, in the state of Texas; and this company owned then about 28 miles of street railroad in the city of Dallas, besides various lots and blocks of land in the city of Dallas, all of the value of $550,000, over and above its indebtedness; this company had executed and had outstanding its first mortgage bonds on all of its property to the amount of $250,000, and owed a floating debt of $70,000; its capital stock was $500,000. J. E. Schneider, R. A. Ferris, John N. Simpson, Alfred Davis, Julius E. Schneider, N. A. McMillan, and defendant J. T. Trezevant owned all of the stock of this corporation. Second. The stockholders in this corporation desired to sell their stock, and, through John N. Simpson, tried to effect a sale of their entire shares of stock at par, or for par and as much over as they could. For this purpose Simpson went to St. Louis, Mo., in 1890, but was not able to make a satisfactory sale. Third. Defendant J. T. Trezevant then began negotiations with one W. W. Kurtz and his associates, of Philadelphia, to sell their said stock, which he did not do. This finally culminated in an agreement between those then owning the stock of the Dallas Consolidated Street Railway Company and the said W. W. Kurtz, H. K. Fox, and Nelson F. Evans to form a new corporation, which was done July 25, 1890, under the name of the Dallas Consolidated Traction Railway Company. The purposes for which this corporation was formed, as expressed in its charter, was for the construction, owning, maintaining, and operating street railways in the city and county of Dallas, state of Texas, and for these purposes, the charter provided, might purchase or otherwise become the owner or operator of any street railway then built or that might thereafter be built in said city and county. Fourth. The capital

stock of this company was fixed by its articles of incorporation at $1,250,000. Fifth. All of the stockholders in the Dallas Consolidated Street Railway Company, except Julius E. Schneider and N. A. McMillan, signed the articles of incorporation, and each of them was made and acted as directors of the new corporation, and all of them or most of them were directors of the old company. Sixth. It was agreed between those owning the old shares of stock of the Dallas Consolidated Street Railway Company and said W. W. Kurtz and his associates that the new street railway company should acquire the property of the old Dallas Consolidated Street Railway Company on the following terms: The old stockholders in the old company were to surrender their certificates of stock in the old company and have them cancelled, and the old company should transfer to the new company all of the former's property; that the latter company should issue its first mortgage bonds for $1,250,000, and should issue its stock to the extent of $1,000,000. This was done, and the stock and bonds were issued. It was agreed that the stockholders in the Dallas Consolidated Street Railway Company should have of these bonds $225,000, and a like amount of stock of the new company; and these stocks and bonds were so issued and delivered. It was also agreed among the said stockholders and officers of the said two companies that said W. W. Kurtz and his associates, residing in Philadelphia, were to receive $525,000 of the bonds of said new company and $775,000 in the stock of same, and they were to, and did, pay to defendant J. T. Trezevant and his Dallas associates, in cash, the sum of $325,000. Seventh. J. T. Trezevant owned one tenth of the shares of the old company, received one tenth of the said $325,000 cash, or $32,500; also one tenth of the bonds received by the stockholders of the old company, or $22,500, and one tenth of the stock delivered to the Dallas parties; so that he received:

| | |
|---|---:|
| Cash | $32,500 |
| Bonds | 22,500 |
| Stock | 22,500 |
| Total | $77,500 |

—Eighth. I find that the cash and bonds received by defendant Trezevant equaled the value of his interest in the old company, and his stock of $22,500 cost him nothing. Ninth. W. W. Kurtz and his associates were also to pay into the treasury of the company for development purposes, and to enable the old company to pay its floating debt, $200,000; he only paid into the treasury $126,000, and got only $451,000 in bonds of the company. The $74,000 in bonds W. W. Kurtz was to get, the company used to secure the floating debt owing by the old company, which the new company assumed, and which has not been paid. The other bonds, amounting to $500,000, were, by an agreement of all parties, placed in the hands of the Fidelity Trust Company, trustee in the mortgage to secure the bonds, one half of which when sold was to raise money to retire the $250,000 bonds of the old company, and the other or remaining bonds, when sold and money realized, was to be used by the company in developing its property and making extensions. These bonds never could be sold, and are now with the said trust company. The old bonds are still outstanding and unpaid. I find that there are now outstanding against said property the following debts, to wit:

1st bonds:
| | |
|---|---:|
| To Dallas parties | $ 225,000 |
| To W. W. Kurtz and associates | 451,000 |
| To collaterals | 74,000 |
| Bonds of old company | 250,000 |
| Total | $1,000,000 |

2nd:
| | |
|---|---:|
| Floating debt secured by bonds | 70,000 |
| Total debt | $1,070,000 |

—Tenth. At the time of the transaction between the stockholders of the old company and the said W. W. Kurtz and associates was going on, plaintiff, a Connecticut corporation, and a citizen of that state, was erecting, under a written contract for the Dallas Consolidated Street Railway Company, its electrical appliances to operate parts of its line by electricity, which it did at and for the sum of about $42,000, completing its work in December, 1890. At this time the Dallas Consolidated Traction Railway Company was in possession of and operating the said street railroads, and this company paid plaintiff the sum of about $10,000, and gave its notes to plaintiff for the balance due for its said work. These notes were not paid when due, and plaintiff instituted a suit, No. 1.433, in this court. against said Dallas Consolidated Traction Railway Company for its said debt, and on the 23d day of February, 1892, recovered a judgment against said defendant for the sum of $33,590.96, and costs, amounting to about $25; the judgment bears 6 per cent. On this judgment an execution issued March 30, 1892, and was thereafter placed in the United States marshal's hands, who thereafterwards returned the same into this court, stating in his return that he was unable to find any property of the defendant in the writ whereon to levy the same. Plaintiff then filed its motion in this cause against defendant J. T. Trezevant for an execution for 60 per cent. of $22,500, the amount of stock received by him from the Dallas Consolidated Traction Railway Company. Eleventh. That the stock of the defendant company had no value at the date of its issuance, and has had none since. Twelfth. That the plaintiff, at the time it accepted the defendant company's notes, knew of the transfer from the old to the new company."

"Conclusions of law: I do not think that the plaintiff can proceed under article 595, Rev. St. Tex., in a case like this in this court, on the law side of the docket, and get an execution against one who has obtained his stock as defendant has in this case. I, therefore, refuse the motion, without prejudice to the plaintiff to bring such appropriate proceedings as it may see proper."

The language of the statute referred to is as follows:

"If any execution shall have been issued against property or effects of a corporation, except a railway, or a religious, or a charitable, corporation, and there cannot be found any property whereon to levy such execution, then the execution may be issued against any of the stockholders to an extent equal to the amount of stock unpaid; but no execution shall issue against any stockholder except upon an order of the court in which the action, suit, or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged, and upon such motion such court may order execution to issue accordingly, or the plaintiff in execution may proceed by action to charge the stockholders with the amount of his judgment, in accordance with the liability of the stockholders." Rev. St. Tex. art. 595.

We concur in the opinion of the judge of the circuit court that the plaintiff cannot proceed at law in the circuit court, under article 595 of the Texas Revised Statutes, to get an execution against one who has obtained his stock under the circumstances and in the manner that the defendant did in this case. We have had occasion, in a case just decided, Grant v. Railroad Co., 54 Fed. Rep. 569, to examine carefully all the leading decisions of the United States supreme court bearing on this subject and cited and discussed by counsel in this case. It is often difficult to extract and cast into a formula the doctrines of numerous cases presenting so many various phases as arise in the subscription, issuance, and disposition of the stock of incorporated companies. It is perhaps not more difficult than it might prove hurtful. The same reasons which have for so many years justified the courts in declining to attempt an exact and general definition of fraud apply with hardly

less force to warn against any unnecessary announcement of a general doctrine deduced from adjudged cases in which alleged fraud enters as the vital issue. In this case there was no subscription of stock. The defendant did not contract to pay anything more for his stock than he did pay. He had property which the corporation wanted and needed, suitable for its use and ready for its use. In this case it is immaterial that he was a member, even a director, of the corporation to which he sold. His property, over and above all the charges on it, legal or equitable, was worth, net, $55,000. He sold it for $32,500, in cash, and $45,000, in the bonds and stock of the corporation. Where is the proof that the stock and bonds were or are worth more than the property he gave for them, namely, $22,500? The judge of the circuit court finds that the stock of the company had no value at the date of its issuance, and has had none since. He also finds that, of the issue of $1,250,000 par value of bonds, $500,000, that were to have been sold for specified purposes, "never could be sold," and are now with the depositary. What has the defendant done to harm the plaintiff, or to render himself liable to it in the sum of $13,500, or any other sum? Is this liability claimed because the issuance of the stocks or of the bonds or of both were wholly or in part fictitious issues? If so it certainly presents matters which the circuit court could not try on the motion made by the plaintiff in this cause. It is manifestly immaterial to inquire or determine whether in any case execution may, under section 595, be ordered against a stockholder in a street-railway corporation. The judgment of the circuit court is affirmed.